UNITED STATES of America, Plaintiff-Appellee,

v.

Rafael ASTORGA–TORRES, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jesus TORRES–TORRES, Defendant-Appellant.

Nos. 81–1063, 81–1064.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided July 26, 1982.

Rehearing and Rehearing En Banc Denied Sept. 20, 1982.

Before MERRILL and KENNEDY, Circuit Judges, and KING,* Chief District Judge.

## OPINION

MERRILL, Circuit Judge.

Appellants have been convicted of conspiracy to distribute heroin, Count I; possession with intent to distribute heroin, Count II; assault with deadly weapons upon special agents of the Drug Enforcement Agency (DEA), Count III; and, carrying of a firearm during commission of a federal narcotics felony, Count IV. On this appeal, they assign error in many respects.

The incidents giving rise to the criminal charges occurred on June 11, 1980 at a motel near Tulare, California. The motel was the rendezvous established by DEA agents and appellants' co-defendant, Jose Ambriz-Ambriz, for a narcotics sale by Ambriz. While under surveillance of DEA agents, Ambriz and appellants in two cars had traveled to Tulare from the Los Angeles area. At the motel, Ambriz was assigned cabin 7 and appellants cabin 4. The arrangements with Ambriz had been for the sale of fifteen ounces of heroin on June 11 and fifteen ounces on June 12. The price was to have been $3,300 per ounce. Outside cabin 7, Ambriz produced a brown paper bag for inspection by Agent Delgado. Delgado satisfied himself that the bag contained heroin and then gave a signal on which Ambriz was placed under arrest by other agents. The bag contained only seven ounces of heroin, each ounce packaged in a condom bearing the date 12/79 and stamped "Trojan." Later investigation revealed no additional heroin in cabin 7, but a scrap of paper was found there with calculations: $8 \times 3300$ totaling 26,400; $7 \times 3300$ totaling 23,100. The two products were summed for a total of 49,500—the agreed dollar price for the fifteen ounces of heroin.

After Ambriz had been arrested, the agents knocked at the door of cabin 4, identified themselves, and demanded entrance. There was no response. This had continued for about a minute when an agent at the front door heard a clicking sound which he took to be the cocking of a firearm. The door was then kicked in and the agents found themselves confronted by one of the appellants with a revolver. He fired at the agents who responded with a shotgun wounding the appellant. This initiated a sporadic exchange of gunfire through the door and bathroom window. Finally a tear gas cannister was fired into the room and appellants surrendered; threw out their guns; and, came out with hands up.

Agent Plavan entered the cabin, satisfied himself that no one else was in it and observed the extensive damage done by the shootout. In the bathroom, the basin faucet was running at full power and the toilet

* Honorable Samuel P. King, Chief United States District Judge, District of Hawaii, sitting by designation.

bowl was filled with debris including a wallet and papers. Agent Plavan removed the debris and placed it on top of the toilet tank to dry. There was no sign of the paper bag. The cabin was sealed and placed in control of local officers. Later that night a DEA agent returned and retrieved the material that had been found in the toilet bowl.

The motel cabins were connected to four septic tanks, with cabins 4 and 7 connected to different tanks. On August 8, 1980, agents had the septic tank serving cabin 4 and three other cabins opened and pumped out. Approximately twelve condoms were recovered. One was tied at the end and appeared to be full of substance. Two were tied at the end but were torn below the knot and were empty. All three were stamped "Trojan." The two torn condoms bore the date 12/79. The date on the full condom was illegible. These three condoms were received in evidence at the trial. The others were discarded.

Ambriz pleaded guilty to five counts of the indictment, including Counts I and II. Appellants pleaded not guilty and were tried before a jury.

At the trial, a government expert testified to chemical analysis of the contents of the full condom and of the documents recovered from the toilet bowl. He testified that the condom contained heroin and that the documents gave evidence of having been in contact with heroin.

Agent Delgado testified as to two prior drug transactions with Ambriz: purchases of one ounce on May 3, 1980 in Fresno, and of two ounces on May 4, 1980 in Tulare County. On each occasion, the heroin had been packaged in Trojan condoms. On the latter occasion, Ambriz had been observed by another agent to have met with one of the appellants before leaving the Los Angeles area for Tulare. Agent Delgado testified that in making arrangements for the June 11th sale, Ambriz had stated that he was going to bring someone to guard him.

The government's theory was that appellants were knowing parties to a conspiracy to sell heroin and had been in actual possession of the balance of the fifteen ounces that was the subject of the June 11 sale and had flushed it down the basin and the toilet during the course of the gun fight.

Appellants' defense was that they knew nothing of the narcotics sale and never had knowing possession of any narcotics.

*Motion to Suppress*

█ Appellants sought to suppress the documents recovered from the toilet bowl on the ground that they were the product of an unlawful warrantless search. They assign as error the court's denial of their motion. We find no error. Since the documents were in plain view once Agent Plavan had entered the cabin the only question is whether his entry into the cabin was proper under the circumstances. We hold that it was.

We note first that the agents had probable cause to suppose that appellants were parties to Ambriz's proposed sale; were in possession of the missing eight ounces of heroin; and were subject to arrest. They had traveled to Tulare in close company with Ambriz and had been observed to be in contact with him at the motel. They had been observed in possession of a paper bag similar to the one in Ambriz's possession containing seven ounces of heroin. Ambriz had stated that he intended to bring guards. Clearly these "facts and circumstances ... were sufficient to warrant a prudent man in believing that the petitioner[s] had committed or [were] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). It was then proper for the agents to demand entry into appellants' cabin after identifying themselves in order to place appellants under arrest.

█ Further it was proper for Agent Plavan to enter the cabin following the shootout. While the presence of anyone else in the cabin was most unlikely, *cf. United States v. Gardner*, 627 F.2d 906, 911 (9th Cir. 1980) (protective search of premises permissible when officers reasonably believe additional dangerous persons may be present), officers who have been subjected to pistol fire from the front door and bath-

room window can hardly be said to be acting unreasonably when they take steps to make sure of their safety. "Courts must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger." *United States v. Coates*, 495 F.2d 160, 165 (D.C.Cir.1974). Agent Plavan's entry into the cabin was also reasonable to guard against any threat of fire created by the tear gas cannister and to preserve any evidence from possible destruction. *Cf. Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978) (fire official's prompt inspection of burned building justified to discover continuing dangers and to preserve evidence from destruction). This is especially true here where the agents had reason to believe appellants were in possession of heroin—a substance particularly susceptible to destruction. (As an example had the material in the toilet bowl not been removed, any indication that the bowl had once contained heroin might well have been lost.) Further it would seem the act of responsible peace officers to take note of the extent of property damage resulting from a shootout which they and their agency might well be called on to justify.

■ Once lawfully inside the cabin, it was proper for the agent to seize any evidence which he observed in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971).

■ Appellants also contend that regardless of the validity of the initial cabin check, it was improper for the agents without warrant to return to the cabin to retrieve the documents laid out to dry. We disagree. In retrieving what had already, in effect, been properly seized there was no further prejudicial intrusion upon appellants' privacy, especially in light of their clear abandonment of the seized items. We

conclude that it was not error to deny suppression of the material found in the toilet bowl.

■ Appellants also sought to suppress the condoms found in the septic tank on the ground that any connection this evidence had to them was so tenuous as to render the evidence irrelevant. We disagree. The likelihood that anyone else may have found it necessary during the relevant time span to flush down the toilet condoms containing or apparently having contained contraband is, in our view, sufficiently remote to render the evidence relevant. Its weight as proof was for the jury to determine.

*Prior Acts and Declarations of Ambriz*

■■ Appellants contend that testimony concerning drug sales and statements made by Ambriz prior to the existence of any conspiracy between him and appellants was inadmissible hearsay. As to the earlier drug sales, we note that Ambriz by his nonverbal conduct in consummating the transactions clearly did not intend an assertion. Accordingly evidence of the prior sales was not hearsay and there is no need to bring it within a hearsay exception. *See* Rule 801, Fed.R.Evid. The evidence was relevant as an indication of Ambriz's *modus operandi*.

■ As to Ambriz's earlier statements, only his comment that he intended to bring guards with him to Tulare was really prejudicial. That statement was properly admitted as evidence of Ambriz's intent under Rule 803, Fed.R.Evid.[1] Rule 803 follows the holding in *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 295–96, 12 S.Ct. 909, 912–13, 36 L.Ed. 706 (1891), to the effect that a statement of the declarant's intent to do something is competent "not as [a] narrative[ ] of facts communicated to the [declarant] by others, nor yet as proof that he

---

1. Rule 803 provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * *

"(3) * * * A statement of the declarant's then existing state of mind * * * (such as intent, plan * * *) * * *."

actually [did as he intended,] but as evidence that * * * he had the intention of [so doing]." Evidence of that intent can then be considered by the jury in determining whether the declarant subsequently performed the intended act. To the same effect, *United States v. Pheaster*, 544 F.2d 353, 374–80 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977) (applying *Hillmon* before Federal Rules of Evidence were in effect); *United States v. Jenkins*, 579 F.2d 840, 842–44 (4th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Here an appropriate limiting instruction was given.[2] Accordingly we conclude that Ambriz's statement was properly admitted not as proof that in fact he did bring guards with him to Tulare (or that appellants were those guards) but as evidence that he had the intent to do so, from which evidence inferences could properly be drawn by the jury. For this purpose the statement was admissible and relevant as to the other defendants. *See United States v. Pheaster, supra.*

■ With respect to the same statement of Ambriz, the judge further instructed the jury that if they found that a conspiracy existed between Ambriz and Appellant Astorga-Torres at the time the statement was made, then as to that appellant they could consider the statement "for all purposes" as the declaration of a co-conspirator.[3] Arguing that the record is devoid of any evidence from which it could be concluded that a conspiracy existed at that time, Appellant Astorga-Torres assigns the giving of this instruction as error. We accept, *arguendo*, this contention of error but hold it to have been harmless. The line between use of a statement as *proof* that the intended act was in fact ultimately performed (improper use) and its use as basis for an *inference* to that end (proper use) is at best tenuous. *Cf. Nash v. United States*, 54 F.2d 1006, 1007 (2nd Cir. 1932) (such limiting instructions demand of jury "mental gymnastic[s]"). If indeed the jury understood the instruction as an invitation to take the short step from permissible inference to impermissible deduction, its limited impact was overshadowed by the abundant evidence that appellant was engaged in some sort of joint enterprise with Ambriz— evidence from which it could be inferred that appellant's function in that enterprise was such as to call for him to be armed and ready to use armed force to protect against intrusion into the affairs of the enterprise. In our view the more probable effect of the instruction, however, was to call the attention of the jury to the fact that Ambriz's statement was not entitled to conclusive

2. The court instructed:
"These statements [that Ambriz intended to bring persons to guard him and that he intended to sell fifteen ounces of heroin to Delgado on June 11th] were admitted only to show the state of mind or intention of Ambriz at the time he made the statements. The statements * * * are not to be considered by you as evidence that, at the time they were made, these defendants or either of them, by that I mean Rafael and Jesus, were, in fact, his guards or that he had a specific intention to recruit either or both of them as his guards at the time that statement was made, nor were the statements admitted to prove that, at the time they were made, these defendants or either of them, were in a conspiratorial relationship with Ambriz for the unlawful distribution of heroin.
"The statements may, however, be used by you to assess the conduct of Ambriz after he made the statements and may be considered by you to determine if he carried out his expressed intention to bring guards with him

to Tulare on June 11th and did, in fact, have guards with him on that day in the persons of the defendants here on trial.
"The statements may also be used and considered by you to determine if Ambriz carried out his expressed intention to bring, or caused to be brought, to Tulare the fifteen ounces of heroin mentioned in his conversation with Delgado on June 10th."

3. The court instructed:
"If you are persuaded to the required degree of proof that Rafael and Ambriz * * * were in the beginning stages of or were already in a conspiratorial relationship for the sale and distribution of heroin at the time the June 10th statements were made, then you may consider those statements for all purposes in determining the guilt or innocence of Rafael as to those counts of the Indictment to which you believe the evidence of those statements would be relevant."

weight as proof of anything. Under these circumstances, we conclude that any error in the instruction was harmless.

*Jewell Instruction*

██ Count II charged appellants with possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). As we have noted, the Government's theory was that appellants were in actual possession of the eight ounces of heroin that was not found to be in Ambriz's possession. The Government did not contend that they also had such a degree of control over the heroin in Ambriz's possession as to be in constructive possession of that heroin as well.

The district court twice instructed the jury as follows:

If you find that a defendant now on trial was not in possession of the heroin when it was brought to Tulare County but you find that the defendant was present to guard Ambriz-Ambriz, you may still find the defendant guilty as to the offense charged in Count II of the indictment if you find beyond a reasonable doubt that, one, the defendant acted with a conscious purpose to avoid learning that Ambriz-Ambriz was going to be selling heroin, and two, was subjectively aware of a high probability that Ambriz-Ambriz was to sell some heroin.

This instruction was drawn from *United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), where it dealt with establishing not the fact of possession but the fact of knowledge under circumstances where it was contended that the defendant had deliberately closed his eyes to the apparent facts. We have held that the *Jewell* instruction is appropriate only in such circumstances. *United States v. Erwin*, 625 F.2d 838, 841 (9th Cir. 1980). As given here, the instruction invited the jury, if unable to conclude that appellants had been in actual possession of the eight ounc-

es of heroin, to find that they were in constructive possession of the seven ounces possessed by Ambriz. To find such constructive possession, the instruction required the jury to find only that appellants knew, or should have known, that Ambriz had heroin he planned to sell. Yet we have held that "[m]ere proximity to the drug, mere presence, or mere association with the person who does control the drug is insufficient to support a finding of possession." *United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). Because the Government's case as to the actual possession was not without its elements of doubt, the court's error in instructing the jury as to constructive possession was far from harmless.

*Miscellaneous Matters*

██ We find no merit in appellants' contention that they were prejudiced by the Government's destruction of the approximately nine condoms found in the septic tank which were not retained as evidence. The requisite prejudice does not appear. *See United States v. Heiden*, 508 F.2d 898, 902 (9th Cir. 1974).

We find no merit in the contention of one appellant that he did not receive adequate assistance of counsel.

*Conclusion*

Judgment on Counts I, III and IV is AFFIRMED. Judgment on Count II is REVERSED.