494 A.2d 1146

**COMMONWEALTH of Pennsylvania**

v.

**Roderick Y. CURRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 1985.

Filed June 14, 1985.

Mitchell A. Kaufman, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before POPOVICH, WATKINS and LIPEZ, JJ.

LIPEZ, Judge:

In a non-jury trial, defendant was convicted of robbery, aggravated assault, and two firearms violations. A pre-trial motion to suppress evidence of a handgun was denied. Post-trial motions were denied, sentence was imposed, and defendant took this appeal alleging that the lower court erred in refusing defendant's motion to suppress evidence of the gun seized from defendant's apartment, because the police activities in question violated the Fourth Amendment's rule against unreasonable searches and seizures. We affirm.

The facts surrounding this incident are as follows: police officers responded to a call regarding a robbery and shooting incident. At the scene, police first secured aid for the victim they found lying in the street, then were conducted by an eyewitness to the nearby home of the defendant. As police approached the defendant's apartment, they noticed that the front door was wide open, and they could see the defendant clearly through the screen door. Police saw that the defendant was sweating, and that his shirt was spattered with blood. They asked defendant to step out on to the porch, which he did. The accompanying eyewitness then identified defendant as the assailant, and the officers placed defendant under arrest. Incident to the arrest, the victim's wallet was discovered by a pat-down search of the defendant. The arresting officers were joined by a back-up team, who were directed to secure defendant's apartment. One of the officers described the procedure of securing the apartment:

> Check to make sure nobody is in it. First make sure the back door was closed, the windows were secured, nobody could get into the house other than through the front door with a key ... I waited before I locked the entry, wanted to make sure no other means of entry like the back door or the windows. (N.T. 28).

The officer testified that it was the responsibility of the back-up team to secure the apartment and lock it up. The officers went through the entire apartment to make sure the windows were closed and other entrances were locked so that nobody would disturb potential evidence, and to determine if there were any other occupants in the apartment. During this security check, one of the officers noticed the barrel of a gun protruding from a piano stool case, and a spent casing on the floor. It is this handgun which defendant seeks to suppress.

Defendant does not argue that the arrest of defendant was invalid. Police clearly had probable cause to arrest defendant in this case. Instead, defendant claims: (1) that *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d

409 (1970), strictly prohibits the search of a dwelling incident to an arrest which occurred outside the dwelling; and (2) that there were no "exigent circumstances" which justified the security check of his apartment.[1]

■ Initially we note that other federal courts have not interpreted *Vale* as absolutely prohibiting a search of a dwelling incident to an arrest made outside the dwelling. Rather, these courts have focused on whether "exigent circumstances" existed which justified a search, even though a suspect was arrested outside the dwelling. *U.S. v. Astorga-Torres*, 682 F.2d 1331 (9th Cir.1982), *cert. denied* at 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982), *cert. denied* at 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1982); *U.S. v. Allison*, 639 F.2d 792 (D.C.Cir.1980); *McGeehan v. Wainwright*, 526 F.2d 397 (5th Cir.1976); *Hopkins v. Alabama*, 524 F.2d 473 (5th Cir.1975). Thus, our inquiry will be: given the fact that defendant was arrested on his porch, were there "exigent circumstances" that justified the subsequent security check of his apartment?

■ The case law with regard to search and seizure has been summarized as follows:

The Fourth Amendment safeguard against unreasonable searches and seizures is aimed at deterring, inter alia, physical entry into the home. *U.S. v. U.S. District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Securing a warrant under the discernment of a detached

---

1. It is unclear just how long the police officers remained at the apartment after defendant's arrest. One of the back-up officers testified that after searching through the other rooms of the apartment and securing other entrances, the officers had difficulty locking one of the doors. This was explained by one of the arresting officers who testified that he mistakenly gave the back-up team the wrong set of keys with which to lock-up the apartment. Thus, the officers had to wait for the arresting officer to return the keys to them. One of the back-up officers said that this delay lasted fifteen or twenty minutes. The arresting officer said it might have taken an hour or so, but that he was not sure. In either case, there is no evidence that during this delay, the officers did anything other than unsuccessfully attempt to lock the door. There is no indication from the evidence to support defendant's claim that the officers conducted "a calculated and thorough search."

and impartial issuing authority prevents the dangers of unfettered intrusions into such sacrosanct environments. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed.2d 436 (1948). As a result, warrantless searches and seizures inside a home are presumptively unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This presumption can be overcome where a lawful arrest necessitates the search and seizure of dangerous weapons within reach of the accused in the interest of insuring the safety of the arresting officers. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess* [395 U.S. 752, 89 S.Ct. 2034], 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess,* 476 Pa. 364, 382 A.2d 1212 (1978). Neither *Chimel,* supra, nor *Bess,* supra, permit searches of that portion of the premises beyond the accused's immediate control.

*Commonwealth v. Henkel,* 306 Pa.Super. 346, 352, 452 A.2d 759 (1982). The United States Supreme Court has recognized that there are "exigent circumstances" which justify a warrantless search incident to an arrest. The rationale underlying these exceptions to the warrant requirement is to ensure the safety of police officers and to prevent the destruction or removal of evidence. *Chimel v. California, supra; Coolidge v. New Hampshire, supra; Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In light of this rationale, the Pennsylvania Supreme Court has ruled that police may search the entire building incident to an arrest, for the purpose of seeking other people who may threaten the officer's well being, if the officers have reason to believe that others are present. *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982), accord: *Commonwealth v. Henkel,* 306 Pa.Super. 346, 452 A.2d 759 (1982).

In *Mincey v. Arizona, supra,* the U.S. Supreme Court held that an extensive search by police of defendant's home incident to an arrest was improper because there was "no indication that evidence would be lost, destroyed, or re-

moved during the time required to obtain a search warrant." 437 U.S. at 394, 57 L.Ed.2d at 301. Other federal courts have recognized the need to allow police, after an arrest, to make security checks of a dwelling to determine whether any other persons were in the dwelling who might pose a threat to police or destroy, tamper with, or remove evidence. *U.S. v. Irizarry,* 673 F.2d 554 (1st Cir.1982) (the court upheld the validity of a post-arrest security check of defendant's hotel room, where the search was motivated by concern for the safety of fellow officers, and the police had reason to believe that other people, possibly armed, were in the hotel room); *U.S. v. Vasquez,* 638 F.2d 507 (2nd Cir. 1980) (the court upheld the validity of a security check of defendant's apartment, and a plain view seizure of items in the apartment during the security check, where police reasonably believed that other persons were in the apartment and might destroy evidence); *U.S. v. Allison,* 639 F.2d 792 (D.C.Cir.1980) (upheld warrantless search of hotel room, where agents were informed by arrested defendant that another person was staying with him at the hotel, and that this person had "dope" and a "gun"; this provided the necessary "exigent circumstances" because the contraband was threatened with "imminent removal or destruction"); *U.S. v. Gomez,* 633 F.2d 999 (2d Cir.1980) (warrantless security check and evidence seized in plain view during security check are valid, where agents arrested defendant who was with three other people in the apartment; agents had reason to believe that other people might be in the apartment); *U.S. v. Looney,* 481 F.2d 31 (5th Cir.1973) (upheld the admissibility of weapon seized in plain view during cursory search of entire house where police knew that defendant was dangerous and had a known propensity for using confederates); *U.S. v. Christophe,* 470 F.2d 865 (2d Cir.1972) (agents "were entitled to conduct a cursory examination of the premises to see if anyone else was present who might threaten their safety or destroy evidence.").

In *U.S. v. Agapito*, 620 F.2d 324 (2d Cir.1980), *cert. denied* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980), the Second Circuit Court of Appeals minimized the intrusiveness of a security check:

> The reasonableness of a security check is simple and straightforward. From the standpoint of the individual, the intrusion on his privacy right is slight; the search is cursory in nature and is intended to uncover only 'persons, not things.' . . . . From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices in another room to destroy evidence. More important, the safety of the arresting officers or members of the public may be jeopardized.

*Id.* at 336. The court in *Agapito*, however, held that the security check in this instance was unreasonable because the agents had watched the place for several days and had no reason to believe that anyone else was in the room.

A few federal courts have upheld security checks of dwellings even when police have not had a reasonable belief that other persons were inside the dwelling. In *Hopkins v. Alabama*, 524 F.2d 473 (5th Cir.1975), police were fired upon from within defendant's house, shot tear gas to force defendant to exit the house, arrested the defendant outside, and then conducted a security check of the house. The court reasoned that since police had been shot at, and defendant did not have a gun when he came out of the house, the police did not act unreasonably in searching the house to check if anyone else was there who might use the as yet unfound weapon.

Similarly, in *U.S. v. Astorga-Torres*, 682 F.2d 1331 (9th Cir.1982), *cert. denied*, at 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982), *cert. denied*, at 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1982), the court upheld a search of a dwelling incident to an arrest made outside the dwelling. The police were fired upon after they kicked-in defendant's front door. Officers fired tear gas into the cabin, forcing two defendants to throw out their guns and come out of the

cabin.  In upholding the subsequent search of the cabin, the court reasoned that *"[w]hile the presence of anyone else in the cabin was most unlikely* ... officers who have been subjected to pistol fire from [within the cabin] can hardly be said to be acting unreasonably when they take steps to make sure of their safety."  (emphasis added) *Id.* at 1335.

Moreover, in both *Hopkins* and *Astorga-Torres,* the courts upheld the validity of a search of a dwelling incident to an arrest made outside the dwelling.  The court in *Hopkins* specifically stated that the *Vale* decision did not prohibit the search in question because *Vale* did not present "the exigent circumstances and fact setting shown in this case." *Vale* involved a search for narcotics, and there was no indication that the suspect was armed.  In *Hopkins,* however, police were fired upon from within the house, and the weapon was not yet accounted for when they arrested the suspect outside the house.  The court in *Hopkins* concluded that "[t]he immediate need to ensure that no one remained in the house prepared to fire the yet unfound weapon obviously justified the warrantless search." *Hopkins v. Alabama, supra* at 475.

The facts in *Astorga-Torres* were similar to those in *Hopkins* in that police were fired upon from within the cabin, and searched the cabin after arresting two suspects outside the cabin.  Here, the court upheld the search even though the two suspects had surrendered their guns to police.  In both cases, the courts reasoned that the need to ensure the safety of the police officers justified the warrantless searches.

█ The facts of our case do not fit neatly into any of the precise fact situations in the many search and seizure cases noted above.  But the circumstances of our case are similar to those in *Hopkins* and *Astorga-Torres.*  Although in the case *sub judice* police were not fired upon from within defendant's apartment, they had no way of knowing whether or not anyone else was in the apartment.  More importantly, police knew that a shooting incident had just occurred, an eyewitness identified defendant as the assailant,

defendant was observed to be sweaty and his shirt was blood-spattered, and *the gun used in the shooting incident was not yet accounted for* when they arrested defendant on his porch. Under these circumstances, it was not unreasonable for police to enter the apartment and make a brief security check to ensure that no one remained inside the apartment who might use the as yet unaccounted for weapon. Such conduct is perfectly consistent with the rationale underlying the exigent circumstances doctrine, namely: the need to ensure the safety of police officers. In an emergency situation such as this, the potential threat of the unknown can be more dangerous than the threat of the known. We think it is unreasonable to ask police officers arriving at the scene of a shooting incident and arresting defendant on his porch, to assume that nobody else was in defendant's apartment. "Courts must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger." *Astorga-Torres, supra,* at 1335.

Our holding, of course, is limited to the particular circumstances of this case. Had this not been an emergency situation; had this not involved a dangerous shooting incident which had just occurred with the gun not yet accounted for; had the police activities been more intrusive than a security check, the holding might be different. But in the circumstances of this case, we believe our holding to be a reasonable and logical, but limited extension of our courts' ruling in *Commonwealth v. Norris, supra,* and *Commonwealth v. Henkel, supra,* and most of the federal court rulings discussed earlier in this opinion, and consistent with the reasoning of *Hopkins, supra,* and *Astorga-Torres, supra.*[2]

---

2. We note further that the United States Supreme Court has yet to address this specific question. However, in the recent case of *Segura v. U.S.,* 486 U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), in dicta, Chief Justice Burger (who wrote the majority opinion) joined by Justice O'Connor opined that, having arrested the defendant in the lobby of an apartment building, agents should be permitted to conduct a limited security check of defendant's third-floor apartment to ensure that nobody else was there who might pose a threat to their

Defendant's reliance on *Mincey v. Arizona, supra,* is misplaced. *Mincey* did not involve the mere securing of an apartment by police. In *Mincey,* the search by police lasted four days, during which officers opened drawers and closets, and inspected their contents; emptied clothing pockets; and even pulled up sections of the carpet in defendant's apartment. In all, 200–300 objects were seized. The police activities in our case do not even remotely resemble those in *Mincey.*[3]

Our case is distinguishable from *Commonwealth v. Getz,* 236 Pa.Super. 469, 344 A.2d 686 (1975) in two important respects. First, in *Getz,* the police searched defendant's *second floor* apartment after arresting him on the *ground floor.* Whereas in our case, the arrest occurred on the defendant's porch just outside the apartment's screen door (the solid front door was wide open). Second, in *Getz,* police arrived at the scene of a reported burglary. They had no information indicating that the suspect was armed. In our

safety or destroy evidence. The Chief Justice distinguished between the *possessory* interests and the *privacy* interests of a dwelling; and between the *seizure* of premises and a *search* of premises. A seizure of premises affects possessory interests, while a search of premises affects privacy interests. The Chief Justice characterized the temporary securing of a dwelling as a *seizure* of the premises, not a search. He concluded, "the heightened protection we accord privacy interests is simply not implicated where a *seizure* of the premises, not a search, is at issue" *Id.* at —, 104 S.Ct. at 3389, 82 L.Ed.2d at 612. Only Justice O'Connor joined in this part of the Chief Justice's opinion.

3. We need not decide whether the other rationale of the "exigent circumstances" doctrine—the need to prevent the removal or destruction of evidence—also justified the police activity in this case. We only note that the threat posed to evidence is not as weighty a circumstance as a threat posed to the lives of police officers. As stated before, in this emergency situation police simply had no way of knowing whether or not anyone else was in the apartment. One officer testified that shortly after defendant's arrest, a woman who identified herself only as defendant's girlfriend's mother tried unsuccessfully to get him to surrender the premises to her. There were also several other people gathered outside the apartment. This case, then, does not fit neatly into the facts of prior cases where police had some reason to believe that others might be present *inside* the defendant's house or apartment. Here, police had reason to believe that at least one person *immediately outside the apartment* might attempt to remove evidence if given a chance to enter the apartment.

case, however, police arrived at the scene of a reported shooting, secured aid for the victim of this incident, arrested the person identified as the assailant, but discovered that the gun was unaccounted for. The potential danger to police in the case *sub judice* was clearly greater than that in *Getz*.

It would be stretching the boundaries of logic to hold that the need to ensure the safety of an arresting officer (and, in this case, the people who had gathered near the apartment) is not as great when he arrests a suspect on his porch, in front of the screen door, as when he arrests a suspect *inside* the apartment, just on the other side of the screen door. Furthermore, it is clear from the facts of this case that police could have legally arrested defendant inside of his apartment. A crime of violence had been committed; it was reasonable to assume that the suspect had a gun; police had probable cause to arrest; and they had a strong reason to believe that the suspect was on the premises. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied* at — U.S. —, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). Therefore, we attach even less significance to the fact that the arrest occurred on the porch.

Thus, given the underlying rationale for the "exigent circumstances" doctrine, we hold that the particular circumstances of this case justified the police activities in undertaking to secure defendant's apartment incident to the arrest. Since the police activities were reasonable and justified under the circumstances, the handgun, spotted in plain view protruding from the piano-stool case, was admissible evidence. "The police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v. Arizona*, 437 U.S. at 393, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. *See also Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980) (Flaherty J., with three justices concurring).

Judgment of sentence affirmed.