**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Raymond Lee CROUSE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 27, 1998.

Filed March 23, 1999.

Anthony E. Miley, Public Defender, Gettysburg, for appellant.

Paul T. Dean, Asst. Dist. Atty., Gettysburg, for Com., appellee.

Before KELLY, BROSKY and MONTEMURO *, JJ.

KELLY, J.:

¶ 1 In this appeal, Appellant, Raymond Lee Crouse, asks us to determine whether a "protective sweep" of a private residence, executed by state police in connection with a valid arrest warrant, violates Article 1, Section 8 of the Pennsylvania Constitution. We hold that a "protective sweep," as defined in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), in connection with the execution of a valid arrest warrant is permissible under the Constitution of this Commonwealth. Accordingly, we affirm Appellant's judgment of sentence.

¶ 2 The facts and procedural history are as follows. On January 11, 1997, at approximately 8:30 a.m., Pennsylvania State troopers James Borza, James W. Sattazahn and two other officers went to 159 East King Street to serve an arrest warrant on Raymond Crouse, Sr., Appellant's father. When the police arrived, Crouse, Sr. answered the door, turned and walked back into the house. Troopers Borza and Sattazahn followed Crouse, Sr. Trooper Borza advised Crouse, Sr. that he was under arrest. After the remaining officers had entered the residence, they heard a woman, later identified as Crouse Sr.'s wife, upstairs on the second floor, yelling for someone, later identified as Crouse, Jr., Appellant. Trooper Sattazahn and

two officers immediately proceeded to the second floor, to secure the residence for the safety of the officers. Trooper Sattazahn found Appellant and a woman together in a bedroom. Trooper Sattazahn scanned the room for any weapons in plain view. During the scan, he observed a marijuana smoking device on a nightstand next to the bed. Shortly after Trooper Sattazahn secured the upstairs, he informed Trooper Borza about the pipe. Trooper Borza then went to the second floor bedroom and saw the pipe on the table. Appellant admitted that he owned the pipe and used it to smoke marijuana. (N.T., Suppression Hearing, 6/26/97, at 5–14).

¶ 3 The police subsequently arrested Appellant. Appellant was charged with possession of drug paraphernalia.[1] On June 3, 1997, Appellant filed a motion to suppress the smoking pipe. The suppression court denied the motion on August 1, 1997. Regarding Appellant's suppression motion, the trial court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On January 11, 1997, Pennsylvania State Police went to the residence of Raymond Crouse, Sr., at 159 East King Street, Littlestown, Pennsylvania in the morning hours for the purpose of serving an arrest warrant upon him.

2. Trooper James Borza had made numerous purchases of marijuana from Mr. Crouse at his residence.

3. When Trooper Borza knocked at the door Raymond Crouse, Sr. opened the door and walked away.

4. Trooper Borza and Trooper James W. Sattazahn followed him into the residence.

5. Upon entry into the residence by the officers, Mrs. Crouse [arrestee's spouse] began yelling for her son so Trooper Sattazahn and two other officers went

---

* Retired Justice assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(32).

upstairs to secure the residence for safety reasons.

6. In route to the second floor the officers yelled "State police – get down."

7. On the second floor the officers located the partially opened door to the bedroom which was occupied at that time by [Appellant] and a female.

8. The officer made a quick scan of the bedroom for weapons and saw a smoking pipe in plain view on the night stand.

9. The pipe was described as a "marijuana pipe."

10. [Appellant] said the pipe was his and he used it to smoke marijuana.

11. [Appellant] was arrested for possession of drug paraphernalia, 35 P.S. Section 780–113(a)(32).

### CONCLUSIONS OF LAW

1. This Court has jurisdiction.

2. The officers lawfully entered [Appellant]'s residence to effectuate the arrest of another person.

3. The officers were lawfully authorized to temporarily go to the second floor to secure the premises and thereby secure the safety of the officers.

4. Under the circumstances the officers were not required to knock and announce before entering the second floor bedroom.

5. The pipe was in plain view.

6. The seizure of the pipe did not violate either the United States or Pennsylvania Constitutions.

(*See* Trial Court Order, dated August 1, 1997, filed upon consideration of [Appellant]'s Motion to Suppress Evidence filed June 3, 1997.)

¶ 4 Appellant was later convicted of the charge, as an ungraded misdemeanor, following a non-jury trial in the Court of Common Pleas of Adams County, Pennsylvania on October 23, 1997. As a sentence, the court placed Appellant on the Adams County Intermediate Punishment Program for a period of twelve months plus fees, costs, and a $200.00 fine. Appellant timely filed this appeal.

¶ 5 Appellant raises the following issue on appeal:

WHETHER APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURE UNDER ARTICLE 1, SECTION 8 OF THE PENNSYLVANIA STATE CONSTITUTION HAS BEEN VIOLATED, WHEN THE STATE POLICE ON JANUARY 11, 1997, ENTERED APPELLANT'S BEDROOM PURSUANT TO A "PROTECTIVE SWEEP" OF APPELLANT'S RESIDENCE WITHOUT A SEARCH WARRANT AND ARRESTED APPELLANT AND HIS GIRLFRIEND WITHOUT AN ARREST WARRANT OR AN APPLICABLE WARRANTLESS ARREST EXCEPTION OR PROBABLE CAUSE TO BELIEVE THAT THE APPELLANT HAD COMMITTED A CRIME.

Appellant's Brief at 3.

¶ 6 Our review of an order denying a motion to suppress is subject to the following principles:

We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. In reviewing the denial of a motion to suppress evidence, "we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." When the evidence supports the suppression court's findings of fact on a motion to suppress, this Court may reverse only when the legal conclusions drawn from those facts are erroneous. However, we are bound by the trial court's findings of fact only to the extent that they are supported by the record.

*Commonwealth v. Felty*, 443 Pa.Super. 559, 662 A.2d 1102, 1104 (1995) (citations

omitted). *See also Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997).

## A. ANALYSIS UNDER THE FEDERAL CONSTITUTION

¶ 7 The United States Supreme Court's decision in *Buie, supra,* defines a warrantless "protective sweep" as a quick and limited search incident to an arrest and conducted to protect the safety of police officers or others; it is narrowly confined to a cursory visual inspection of those places in which a person may be hiding. *Id.* at 327, 110 S.Ct. at 1094, 108 L.Ed.2d at 281. Under *Buie*, the Fourth Amendment allows a protective sweep incident to an arrest if the officer reasonably believes, based on "specific and articulable" facts and rational inferences from those facts, that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Id.* at 337, 110 S.Ct. at 1099, 108 L.Ed.2d at 287. Thus, a protective sweep is "aimed at protecting the arresting officers, if justified by the circumstances." *Id.* Nevertheless, it is not a full search of the premises but may extend only to a cursory inspection of those spaces where a person may be found. *Id.*

¶ 8 Applying the elements of the *Terry* balance test[2], the *Buie* Court reasoned:

> [T]here is an analogous interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack. The risk of danger in

the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter. A *Terry* ... frisk occurs before a police-citizen confrontation has escalated to the point of arrest. A protective sweep, in contrast, occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime. Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.

*Id.* at 333, 110 S.Ct. at 1098, 108 L.Ed.2d at 285. *Buie* makes clear that the Fourth Amendment allows arresting officers to take **reasonable** steps to ensure their safety after, and while making, the arrest. *Id.* at 333, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. In balance, the safety of the officers sufficiently outweighs the intrusion on individual privacy interests such procedures may entail. *Id.*

¶ 9 Pennsylvania law would have validated the present search before *Buie*. As early as 1982, this Court wrote:

> [A]rresting officers are permitted to conduct a brief search of the entire building, within which the accused is arrested, for the limited purpose of seeking other people who may threaten the officers' well being, provided, of course, that such officers have reason to believe that other people are present.

---

**2.** In *Terry*, the Court held that the test for on-the-street weapons frisks involves "balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968). The essence of the *Terry* test is the reasonableness of a particular search or seizure in light of the particular circumstances; i.e., "would the facts available to the officer at the moment of the seizure or the search 'warrant a [person] of reasonable caution in the belief' that the

action taken was appropriate"? *Id.* at 22, 88 S.Ct. at 1868, 20 L.Ed.2d at 906. The *Terry* Court applied this objective balancing test and held that a frisk for weapons is reasonable when weighed against the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest, even though a weapons frisk constitutes a brief but severe intrusion upon cherished personal security. *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.

*Commonwealth v. Henkel,* 306 Pa.Super. 346, 452 A.2d 759, 761–62 (1982). In *Henkel,* the appellant argued that no exigent circumstances occurred after the officers' entry into his home to justify a cursory search of the second floor. The appellant asserted that the police officers' fears were generated by facts known to them for weeks before the arrest. As a result, the appellant maintained that the officers should have obtained a search warrant prior to the arrest.[3] The *Henkel* Court rejected this reasoning. Instead, it chose to rely on the holding of *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982) that a cursory search by officers of other rooms after the defendant had been detained was constitutionally permissible to ensure the officers' safety, where they had reason to suspect the presence of other persons. *Henkel, supra* 452 A.2d at 762. *Norris* further held that the officers, having lawfully entered a bedroom on the second floor pursuant to their security sweep, were in a position to seize whatever instruments of crime were in plain view. *Id.* 446 A.2d at 250. *See also Commonwealth v. Curry,* 343 Pa.Super. 400, 494 A.2d 1146 (1985).

¶ 10 In the instant case, the troopers came to Appellant's home to execute a lawful warrant for the arrest of Appellant's father on drug dealing charges. Once they were admitted into the home by the arrestee, they made a cursory check of the area immediately accessible to the arrestee.

¶ 11 Almost immediately, the officers heard Appellant's mother upstairs yelling for Appellant. At that moment, the officers knew at least one if not more other persons were also in the arrestee's home and these persons were hidden from view. The alarm in her voice and their simultaneous knowledge that unseen persons were present in the home gave the officers reason to suspect that they were in danger. To protect their safety, they moved quickly upstairs, simultaneously announcing their identity. Once they were on the second floor, the officers pushed on a partially open door and entered a bedroom where they found Appellant in bed. The protective sweep of the premises was a direct consequence of the concern evoked by the alarming actions of Appellant's mother, the arrestee's spouse.[4] Thus, we conclude that the officers were lawfully in the home to execute a valid arrest warrant. Pursuant to *Buie, supra,* the officers were (1) lawfully on the second-floor and in the bedroom as a result of the security check provoked by the spontaneous actions of another and (2) in a proper position to seize the drug paraphernalia in plain view on the nightstand. This conclusion is likewise supported by pre-*Buie* Pennsylvania law. *See Norris, supra* ; *Henkel, supra* ; and *Curry, supra.*

¶ 12 Appellant concedes that "protective sweeps" may be permissible under the federal constitution. He also acknowledges that Pennsylvania Courts have recognized "protective sweeps" as a derivative of the classic exceptions to the warrant require-

---

3. Appellant in the present case also claims that the arresting officers should have obtained a search warrant prior to the arrest.

4. Appellant asserts that the police created the circumstances giving rise to the sweep, citing *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996) (holding that search of defendant's premises was illegal, although defendant gave consent, because consent was obtained as result of illegal stop and totality of circumstances did not support stop or need for immediate police action) and *Commonwealth v. Shiflet,* 543 Pa. 164, 670 A.2d 128 (1995) (holding that search incident to arrest

of another did not justify warrantless search of purse belonging to automobile passenger who was not arrested but who was offered ride to police barracks after arrest of motorist and other passenger; search of purse of nonarrestee held too attenuated to be considered search incident to arrest of motorist and other passenger). We disagree. Here, the officers did not manufacture the circumstances. To the contrary, they reacted to Appellant's mother and, based upon the alarm in her voice, the officers swept the upstairs of the premises. *See generally Commonwealth v. Miller,* —— Pa. ——, 724 A.2d 895, 900 (1999).

ment.  Appellant claims, however, that such security searches have been challenged and interpreted to date by Pennsylvania courts only in the context of the Fourth Amendment to the United States Constitution.  Appellant's position on appeal is that the "warrantless" entry and search of his room was *per se* impermissible under Article I, Section 8 of the Pennsylvania State Constitution.  Appellant maintains that there are only three exceptions to the warrant requirement under the Constitution of this Commonwealth that are remotely relevant to this case: exigent circumstances, plain view and search incident to a lawful arrest.  Appellant reasons:

> The exigent circumstance exception is inapplicable because whatever "exigencies" may have existed at the time of the search were exigencies that were created by the police themselves....  The plain view exception is also inapplicable because troopers Borza and Sattazahn were not in a lawful vantage point at the time of the paraphernalia discovery, and the paraphernalia in question was also not immediately apparent as is required for the plain view exception to be applicable....
>
> The last recognized warrantless exception that is remotely relevant to this case is the exception of search incident to a lawful arrest.  This exception, however, is also inapplicable because the area in which the paraphernalia in question was discovered was not in an area within the immediate control of the arrestee, Raymond Crouse, Sr....

(Appellant's Brief at 6).  Appellant concludes that the marijuana pipe confiscated as a result of the protective sweep should have been suppressed because it was retrieved without probable cause, reasonable suspicion, or pursuant to any exception to an arrest or search warrant requirement recognized under the Pennsylvania Constitution.  Therefore, Appellant insists, he must have a new trial.  We disagree.

## B. ANALYSIS UNDER THE PENNSYLVANIA CONSTITUTION

¶ 13 To preserve a constitutional challenge raised on adequate and independent state grounds, it is important for a litigant to analyze at least the following four factors:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case law;

3) related case law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991).  Our Supreme Court has stated that *Edmunds* does not require a litigant to brief and analyze the four factors to preserve a cognizable claim on state constitutional grounds.  *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995).  Nevertheless, a litigant must specifically implicate the Pennsylvania constitution in the claim raised, cite cases in support of the claim, and relate the cases to the claim.  *White, supra* at 899.  Moreover, *Edmunds* does require the Court to undertake its four-part analysis when an issue implicates a provision of the Pennsylvania Constitution.  *In the Interest of B.C.*, 453 Pa.Super. 294, 683 A.2d 919, 926 (1996).

¶ 14 Here, Appellant's brief does not include the text or general history of Article I, Section 8. It provides no related case law from other states but it strongly urges that warrantless searches are subject to greater scrutiny under our state constitution, citing Pennsylvania law favorable to his general position.  As his policy argument in favor of suppression, Appellant offers only a general statement that Article I, Section 8 routinely provides more protection to Pennsylvania citizens than the federal constitution in the area of

search and seizure.[5] Appellant has failed to engage in any meaningful *Edmunds* analysis suggesting how, under the facts of this case, our state constitution should or does provide greater protection than the Fourth Amendment. Despite Appellant's skeletal analysis, we will review his issue. *See White, supra.*

#### (1) Text

¶ 15 Article I, Section 8 of the Pennsylvania Constitution states:

Security from searches and seizures

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation, subscribed to by the affiant.

Pa. Const. Art. I § 8. The Fourth Amendment of the United States Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.C.A. Const. Amend. 4.

As we acknowledged in *Edmunds*, the text of Article I, Section 8 is similar in language to the Fourth Amendment, as both provisions guarantee protection from "unreasonable searches and seizures." Thus, it is not the text itself which imbues Pennsylvania jurisprudence with its unique character but,

rather, the history of our case law as it has developed in the area of search and seizure.

*Commonwealth v. Cass*, 551 Pa. 25, 42, 709 A.2d 350, 358 (1998), *cert. denied*, (—— U.S. ——, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998); *Commonwealth v. J.B.*, 719 A.2d 1058 (Pa.Super.1998)).

#### (2) History and related Pennsylvania law

¶ 16 The notion of privacy implicit in Article I, Section 8 of the Pennsylvania Constitution is particularly strong in this Commonwealth. *Id.* Pennsylvania Courts have recognized that our constitution can provide greater rights and protections to the citizens of this Commonwealth than those provided under similar provisions of the federal constitution. *Edmunds, supra* at 388, 586 A.2d at 894. Indeed, the analysis of the history of Article I, Section 8, as set forth in *Edmunds, supra* and *Cass, supra* demonstrates the particular importance of the right to privacy in Pennsylvania jurisprudence. *J.B., supra* at 1064. Nevertheless, the right to privacy under Pennsylvania law, although extensive, is not unlimited.

¶ 17 Despite Pennsylvania's consistent reverence for privacy protections, its case law has few published decisions related to Appellant's issue. However, we note that the recent evolution of case law under the Pennsylvania Constitution, strongly linking Article I, Section 8 to the right to privacy, occurred simultaneously with Pennsylvania's adoption and application of *Terry, supra*, which our Supreme Court recognized in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969). *See Jackson, supra* at 488, 698 A.2d at 573.

---

**5.** Appellant also claims that he and his female companion were "arrested" before the contraband was discovered and seized, and that this arrest was without probable cause. We have considered Appellant's reasoning and find it flawed. Under the facts as found by the trial court and supported by the record, Appellant was secured, but not immediately arrested, as a result of the protective sweep to ensure the safety of the officers. Appellant was arrested only after the contraband had been discovered in plain view and Appellant had admitted ownership and use. Therefore, Appellant's subsequent arrest was supported by probable cause.

¶ 18 Our Supreme Court has also offered clear guidance in the context of a "greater protections" state constitutional analysis: we are to construe the Pennsylvania constitution as providing greater rights to its citizens than the federal constitution "only where there is a compelling reason to do so." *Commonwealth v. Gray*, 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985). *See also B.C., supra* at 927; *In the Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172, 177 (1993) (Kelly, J., concurring). Although the United States Supreme Court's opinions are not necessarily binding on a state's decisions to provide its citizens with greater rights, a state court is expected "to deal carefully with a Supreme Court opinion and to explain forthrightly why it found itself constrained to reason differently." *B.C., supra* (quoting *Commonwealth v. DeJohn*, 486 Pa. 32, 44, 403 A.2d 1283, 1289 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980)).

¶ 19 The "protective sweep" doctrine as set forth in *Buie, supra,* is based upon the elements of the *Terry* balance test. In *Melendez, supra,* our Supreme Court held that *Terry* also sets forth the standard for the reasonableness of a search under Article I, Section 8 of our state constitution. The *Terry* doctrine has been followed by Pennsylvania courts since *Hicks, supra,* and provides an exception to the probable cause standard for a warrantless search based upon the immediacy of the particular circumstances. *See J.B., supra.* Therefore, Pennsylvania law has explicitly adopted the basis for the *Buie* holding. The *Buie* Court's extrapolation of the *Terry* doctrine in connection with the execution of lawful arrest warrants inside an arrestee's home allows arresting officers to take reasonable steps to ensure their safety after, and while making, an arrest if justified by the circumstances, so long as the search conducted is not a full search of the premises, but only a search limited to a cursory inspection of those spaces where a person may be found. In balance, the safety of the officers sufficiently outweighs the intrusion on individual privacy interests such procedures may entail. *See Buie, supra.* We still must determine whether the *Buie* rationale has a place under our state constitution design.

### (3) Related Case Law from Other States

¶ 20 An examination of related case law from other jurisdictions reveals that a vast majority of states have adopted the rationale of *Buie* and permit "protective sweeps" based upon articulable facts and reasonable suspicions that the officers, or others, involved in a residential situation [6] are in danger. In so doing, however, the states have been not only cautious in their analyses but also conscientious in their strict application of *Buie. See, e.g., People v. Maier*, 226 Cal.App.3d 1670, 277 Cal. Rptr. 667 (1991), *cert. denied*, 502 U.S. 848, 112 S.Ct. 149, 116 L.Ed.2d 115 (1991); *State v. Hedley*, 593 A.2d 576 (Del.Super.1990); *State v. Pesikey*, 1991 WL 138414 (Del.Super.1991); *United States v. Harris*, 629 A.2d 481 (D.C.1993); *Runge v. State*, 701 So.2d 1182 (Fla. 2d DCA 1997); *Brannon v. State*, 231 Ga.App. 847, 500 S.E.2d 597 (1998); *People v. Pierini*, 278 Ill.App.3d 974, 664 N.E.2d 140, 215 Ill.Dec. 743 (1996); *People v. Rushing*, 272 Ill. App.3d 387, 649 N.E.2d 609, 208 Ill.Dec. 553 (1995); *Commonwealth v. Acosta*, 416 Mass. 279, 627 N.E.2d 466 (1993); *Commonwealth v. Allen*, 28 Mass.App.Ct. 589, 554 N.E.2d 854 (1990); *People v. Cartwright*, 454 Mich. 550, 563 N.W.2d 208 (1997); *State v. Roberts*, 957 S.W.2d 449 (Mo.Ct.App.1997); *Hayes v. State*, 106

---

**6.** To name just a few examples derived from the cases, a "residential situation" may arise out of the execution of a lawful arrest warrant, such as in the present case; the execution of a lawful search warrant; the "hot pursuit" theory; the "exigent circumstances" doctrine, including the protection of evanescent evidence. As a threshold matter in all of the cases, the officers must be "lawfully" in the residence. In the present case, whether the officers were lawfully in the house is not at issue.

Nev. 543, 797 P.2d 962 (1990); *State v. Henry*, 133 N.J. 104, 627 A.2d 125 (1993), *cert. denied*, 510 U.S. 984, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993); *State v. Ford*, 278 N.J.Super. 351, 651 A.2d 103 (App.Div. 1995); *State v. Valdez*, 111 N.M. 438, 806 P.2d 578 (1990), *cert. denied*, 111 N.M. 316, 805 P.2d 85 (1991); *State v. Lara*, 110 N.M. 507, 797 P.2d 296 (1990), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990); *People v. Vasquez*, 214 A.D.2d 93, 631 N.Y.S.2d 322 (1995); *People v. Harrell*, 208 A.D.2d 647, 617 N.Y.S.2d 776 (1994), *appeal denied*, 85 N.Y.2d 862, 624 N.Y.S.2d 381, 648 N.E.2d 801 (1995) (citing *People v. Knapp*, 52 N.Y.2d 689, 439 N.Y.S.2d 871, 422 N.E.2d 531 (1981) and *Buie, supra* ); *State v. Davis*, 80 Ohio App.3d 277, 609 N.E.2d 174 (1992); *State v. Meyer*, 587 N.W.2d 719 (S.D.1998); *Beaver v. State*, 942 S.W.2d 626 (Tex.Ct.App. 1996); *Conway v. Commonwealth*, 12 Va. App. 711, 407 S.E.2d 310 (1991); *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996); *State v. Kruse*, 175 Wis.2d 89, 499 N.W.2d 185 (1993). A close examination of these cases shows that, while adopting *Buie*, very few of the states have expressly addressed the application of *Buie* under their state constitutions with any meaningful independent state constitutional analysis. However, states that traditionally protect their citizens' rights to privacy in a manner similar to Pennsylvania have applied *Buie*, reasoning as it does that the safety of the officers sufficiently outweighs the limited intrusion on individual privacy interests proper protective sweeps may entail.

¶ 21 For example, the New Jersey Supreme Court has held that police officers may conduct protective sweeps of areas to insure that no third parties are present who may pose danger to them. *Henry,*

*supra* at 118, 627 A.2d at 132. In *Henry*, the New Jersey Supreme Court confronted a similar issue of whether the seizure of drug paraphernalia during a warrantless protective sweep of an apartment violated Article 1, Paragraph 7 of the New Jersey Constitution. *Id.* at 106, 627 A.2d at 126. The *Henry* Court reasoned that the State must prove the reasonableness of the warrantless search because warrantless searches and seizures inside homes are presumptively unreasonable. *Id.* at 110, 627 A.2d at 128. Applying this standard to the facts of the case[7], the Court allowed the police to "fan out" and conduct a protective sweep if they have reason to believe that they may be in danger from other parties on the premises. *Id.* at 118, 627 A.2d at 132. Therefore, the Court held that the facts in *Henry* presented a potentially dangerous situation to the police officers and a protective sweep of the apartment insured their safety. *Id.* The *Henry* Court established that protective sweeps pass state constitutional muster when situations threaten the safety of the officer, despite New Jersey's long standing tradition of providing broader protections to its citizens than the minimum provided under the Federal Constitution.

¶ 22 In view of the fact that Pennsylvania law has permitted a form of protective or security sweeps before *Buie*, and such sweeps were actually somewhat broader than those permitted by *Buie*, we conclude that the *Buie* limited protective sweeps have a place in Pennsylvania law. They are, of course, subject to the *Buie* reasonableness standard and analysis.

### (4) Policy Considerations

¶ 23 The logic behind a protective sweep or security check is simple and straightfor-

---

7. In *Henry,* a detective bought "crack" cocaine from defendant in an apartment and called for backup. The backup team entered the apartment, noticed one occupant slip away to another room and followed her there. They found her hiding crack vials under a mattress and proceeded to seize them and arrest three of the occupants. Although the

search in *Henry* differs from that of the present case in that it was made during a "buy-bust" operation, the search was determined reasonable in light of the circumstances surrounding the consent to enter initially given to the detective conducting the controlled drug purchase and the circumstances as they quickly developed.

ward. Where the safety of the arresting officers can be jeopardized, their safety outweighs the minimal intrusion a properly executed sweep may have upon an individual's privacy. Thus, we see no compelling reason to deviate from the *Buie* analysis to provide greater rights in this context at the expense of the safety of our state law enforcement personnel. *See Gray, supra.*

¶ 24 The kind of sweep envisioned here is for persons. It cannot be used as a pretext for an evidentiary search. It cannot be lengthy or unduly disruptive. It must be swift and target only those areas where a person could reasonably be expected to hide. Above all, it must be supported by articulable facts and inferences giving rise to reasonable suspicion that the area to be swept harbors an individual posing a danger to the police.

■■ ¶ 25 The sweep in the instant case complies with these standards as established in *Buie*. Having been lawfully admitted into the house, the officers checked the areas immediately adjacent to the arrestee. While proceeding to execute the arrest warrant, they were suddenly made to realize that at least two other persons were in the house and hidden from view. When they heard the arrestee's spouse calling in alarm for a third person, the officers simply could not take the chance of an ambush from the second floor. Moreover, their sweep of the second-floor area was limited to "living spaces." There is no evidence of record that either the scope or duration of the search was excessive. Here, the officers were forced to make split-second decisions about what they needed to do to protect themselves in a rapidly unfolding scenario of changing circumstances. To expect the officers to wait for an overt act of hostility before they are allowed to try to neutralize the threat of physical harm is simply unwise especially where they are in a known drug-trafficking location which also happens to be the dealer/arrestee's home turf. *See Buie, supra.*

¶ 26 Thus, we conclude that the limited protective search in this case did not violate Article I, Section 8 of our state constitution. Although this conclusion is consistent with the United States Supreme Court's decision in *Buie*, we have reached it based upon independent and adequate state grounds as required by *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). *See Cass, supra.* Accordingly, we agree with the trial court's decision to deny Appellant's suppression motion and affirm Appellant's judgment of sentence.

¶ 27 Judgment of sentence affirmed.