**UNITED STATES of America, Appellee,**

v.

**Royce Wayne DUGGER, Appellant.**

No. 78–3657.

United States Court of Appeals, Ninth Circuit.

Aug. 24, 1979.

Katrina C. Pflaumer, Seattle, Wash., for appellant.

Richard B. Jones, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before ELY and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

ELY, Circuit Judge:

Dugger appeals his conviction for unlawfully possessing a firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871, contending that evidence and statements admitted against him at trial were the product of an unlawful warrantless entry into his apartment and should have been suppressed.

I.

In the early morning hours of May 13, 1977, two Clark County, Washington, depu-

---

* The Honorable William J. Jameson,. Senior United States District Judge for the District of Montana, sitting by designation.

ty sheriffs responded to a report of a fist-fight at an apartment complex. The officers arrived about one hour after the fight had ended and they interviewed the alleged victim of the assault, one Larson.[1] The officers then followed a trail of blood leading from Larson back to Dugger's apartment, where they observed blood on the front door and keys in the lock. They rang the doorbell "two or three times," but heard no response from inside. Then, one of the officers, uninvited, turned the key, pushed the door open, and stepped back away from the open door. The officers then called to Dugger and identified themselves as being from the sheriff's department. They heard no immediate response. Then, a male within the apartment called out that he was putting on his shoes and would be right out.

What happened next is in dispute. The Government at trial argued that Dugger gave the officers permission to enter the apartment. Dugger denies giving consent to the entry. The District Court never made any findings on the issue of consent. Rather, the District Court justified the warrantless entry on the grounds of exigent circumstances arising out of the bloody fistfight and the need to determine if anyone needed immediate medical attention.[2]

Upon entering Dugger's apartment, the officers walked through the darkened living room to the lighted rear bedroom of the dwelling. There they found the defendant putting on his shoes. While one of the officers questioned Dugger, his companion quickly searched the rest of the apartment for other occupants. Then the officers asked Dugger to go with them into the living room. While looking for the light switch in the living room by flashlight, the officers observed what appeared to be marijuana strewn over the living room floor.[3]

---

1. Mr. Larson's condition was described by the officers as follows:

    Both of his eyes were very swollen and puffy, and he had lacerations on his face, and his face was very bloody.

2. The District Court's findings of exigent circumstances are found in the transcript, which, in pertinent part, reads as follows:

    THE COURT: I find that they lawfully entered the premises.

    MISS PFLAUMER [Defense Counsel]: Under the exigent circumstances exception, your Honor?

    THE COURT: Under several reasons. They had a duty to do that. Without the blood I would say no. They were right there, somebody could flee, somebody could have a gun, somebody could have a knife, anything. I just have no reason to believe otherwise. And I don't disbelieve your client, except that he had been drinking, by his own admission. And this thing, did he say come in or not, well we do know he said don't search, and they stopped, and they got the telephonic search warrant which the law provides for, and they went back. * * *

    MISS PFLAUMER: I have the problem of walking into the apartment. They do not maintain that there was any emergency, they have never maintained that there was any emergency or that there was any fear of the person within.

    \* \* \* \* \* \*

    THE COURT: I am not a policeman, I am just going to decide whether they entered lawfully or not, and I think they did. I think with the blood there, the emergency was when they pulled their weapons and stood against that door, they didn't want bullets coming through the door.

    MISS PFLAUMER: * * * [T]he question is under what exception to the warrant would justify their entering the apartment? They were not claiming they were in hot pursuit of anyone, they were quite aware apparently that they were waking somebody up. So I don't think the blood is a factor here.

    THE COURT: It is with me, and it led right to that door, it did either lead to it or from it, one of the two, and the key is in the door.

    \* \* \* \* \* \*

    THE COURT: Your issue is crossing the threshold [after opening the door and then stepping back], and I say they had a right to do it.

    MISS PFLAUMER: Under the exigent circumstances doctrine.

    THE COURT: Oh, I think emergency also. So I will deny the motion.

    Transcript at pages 57–62.

3. One of the officers testified that he stepped on what sounded like a metal tray while walking through the darkened living room and that this step likely "catapulted" the marijuana out of the tray onto the floor.

After the living room light was turned on, Dugger was asked to consent to a more extensive search of the apartment. Consent was refused.

The officers then obtained a telephonic search warrant based upon the plain-view observations of marijuana on the apartment floor. A subsequent search revealed more marijuana and also the sawed-off shotgun that is the subject of this prosecution.

## II.

Dugger claims that the officers' uninvited entry into his apartment was unlawful and therefore that any observations made while in his apartment could not serve as the basis for the telephonic search warrant.

If the District Court erred in its conclusion that exigent circumstances existed which would excuse the requirement for a warrant, then the officers had no right to be in Dugger's living room unless Dugger gave the officers permission to enter. Absent any right to be in the living room, the plain-view observation of the marijuana would be tainted by the officers' unlawful presence and could not serve as foundation for a subsequent search warrant. *Brown v. Illinois*, 422 U.S. 590, 597–600, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Blalock*, 578 F.2d 245, 248 (9th Cir. 1978); *United States v. McLaughlin*, 525 F.2d 517, 520 (9th Cir. 1975), *cert. denied*, 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976).

■ The issue of whether the District Court properly found the existence of an emergency which would justify a warrantless entry is a question of mixed law and fact and is to be judged here on review under the "clearly erroneous" standard. *United States v. Flickinger*, 573 F.2d 1349, 1357 (9th Cir. 1978), *cert. denied*, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1979). Thus, before we may set aside findings of exigency, we must be left with the "definite and firm conviction that a mistake has been committed." *Id.* at 1357; *see United States*

*v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In this case, we are convinced that a mistake was committed.

■ Since the exigency doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof rests upon the Government to show that the warrantless entry falls within the exception. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Rather than requiring the Government to "point to specific and articulable facts which, taken together with rational inferences from those facts, [would] reasonably warrant [the warrantless] intrusion," (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)),[4] the hearing transcript indicates that the District Court erroneously placed this burden on Dugger to disprove any emergency. At oral argument, the Government conceded that its case for admission of the proffered evidence was based upon Dugger's alleged consent to the officers' entry and not on the existence of any emergency.

■ Under the facts of this case, we cannot sustain the District Court's finding that an emergency existed which would have excused the officers' failure to obtain a warrant before they entered the apartment. As the Supreme Court has instructed, "the scope of the warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). Thus, even assuming *arguendo* that the blood observed by the officers would, by itself, justify the officers' tracking the blood trail back to Dugger's apartment, turning the key in the lock, pushing open the door, and then yelling out to Dugger, once the officers heard Dugger respond from within that he was coming outside as

4. *See Root v. Gauper*, 438 F.2d 361, 364–65 (8th Cir. 1971).

soon as he put on his shoes, any excuse of an emergency dissipated.[5]

Only very recently the Supreme Court reminded us of Mr. Justice Jackson's admonition in *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), where he wrote:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Mincey v. Arizona, supra,* 437 U.S. 387, 98 S.Ct. at 2415.

Because we cannot uphold the District Court's determination that an emergency existed which would excuse the Fourth Amendment requirement of a warrant, and because no explicit findings were made as to whether Dugger consented to the officers' entry into his apartment, we reverse and remand to the District Court in order that it may consider the Government's claim that the officers were given permission to enter the apartment by Dugger.

Reversed and remanded.

---

**5.** There is no evidence in the record to indicate that the alleged victim, Mr. Larson, or any other individual, told the officers that Dugger was armed or injured or that any other persons were injured in the fight. In this case, the District Court's conclusion that an emergency situation existed rested on conjecture. The trial judge told Dugger's counsel "somebody could flee, somebody could have a gun, somebody could have a knife, anything. I just have no reason to believe otherwise." Nor do the circumstances here approach those present in *United States v. Flickinger,* 573 F.2d 1349, 1356 (9th Cir. 1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1979), where we held it reasonable for the arresting officers, acting without a warrant, but with probable cause to arrest, to conclude that occupants in a home were likely to destroy evidence, attempt an escape, or engage in armed resistance.